UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.

**WANDA KOEHN**,

       Plaintiff,

vs.

**SPANX, INC., a foreign for-profit
corporation**

       Defendant.

_____/

## **COMPLAINT**

Plaintiff WANDA KOEHN, through undersigned counsel, sues SPANX, INC., a foreign

for-profit corporation, and alleges as follows:

1.     This is an action for declaratory and injunctive relief pursuant to Title III of the

Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R.

Part 36.  This is also an action for declaratory and injunctive relief to prevent discrimination which

includes equal access to internet Website for services to order and secure information about

Defendant's stores online.

2.     This Court has jurisdiction over this case based on federal question jurisdiction, 28

U.S.C. § 1331 and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202.

3.     Venue is proper in this Court as all actions complained of herein and injuries and

damages suffered occurred in the Middle District of Florida.

4.      Plaintiff WANDA KOEHN is a resident of Hillsborough County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. § 12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been visually disabled and suffers from diabetic retinopathy and macular degeneration, a permanent eye disease and medical condition that substantially and significantly impairs her vision. Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, accurately visualizing her world and adequately traversing obstacles.  As such, she is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. § 3602(h).

6.      Because she is visually disabled, Plaintiff cannot use her computer without the assistance of appropriate and available screen reader software.

7.      Defendant is a foreign for-profit corporation authorized to do business and doing business in the State of Florida. Defendant owns and operates a chain of retail stores selling to the public slimming intimates, body shapers, hosiery, and apparel, including the store that Plaintiff intended to patronize at 303 Brandon Town Center Drive, Brandon, Florida.

8.      Plaintiff's visual disability limits her in the performance of major life activities, including sight, and she requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with her use of a computer.

9.      Plaintiff frequently accesses the internet.  Because she is significantly and permanently visually disabled, in order to effectively communicate and comprehend information available on the internet and hereby access/comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.     At all times material hereto, Defendant was and still is an organization that owns and operates a chain of retail stores selling to the public slimming intimates, body shapers, hosiery, and apparel selling under the brand name "Spanx". Each Spanx store is open to the public.  As the owner and operator of these retail stores, Defendant is defined as a place of "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant controls, maintains, and/or operates an adjunct website called https://www.spanx.com  (hereinafter the "Website").  One of the functions of the Website is to provide the public information on the various locations of Defendant's stores that sell its merchandise throughout the United States and within the State of Florida.  Defendant also sells to the public its merchandise and goods through the Website.

13.     The Website also services Defendant's physical stores by providing information on its available products and branded merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

14.     Because the Website allows the public the ability to locate Defendant's physical stores, purchase merchandise from Defendant that is also available for purchase in its physical stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the Website is characterized as an intangible service, privilege and

advantage provided by a place of public accommodation as defined under the ADA and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its brick and mortar locations and businesses.

15.     Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant in its physical stores and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores, the Website is an extension of, and gateway to, the physical stores, which are places of public accommodation pursuant to the ADA, 42 U.S.C. § 12181(7) (E).  As such, the Website is an intangible service, privilege and advantage of Defendant's brick and mortar store locations that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled general public both online and in its physical stores.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the Website.  Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege and advantage of Defendant's brick and mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both online and at the physical store.  As such, Defendant has subjected itself and the Website to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize once the Website's access barriers are removed or remedied, Defendant's physical stores (including the store at 303 Brandon Town Center Drive, Brandon, Florida.), and to search for brick

and mortar store locations, check store hours and merchandise availability and pricing, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the Website or in Defendant's physical stores.

18.     The opportunity to shop and pre-shop Defendant's merchandise and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use in the physical stores from her home are important accommodations for Plaintiff because traveling outside of her home as a visually disabled individual is often difficult, hazardous, frightening, frustrating and confusing experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually impaired individuals using the screen reader software.

19.     Like many consumers, Plaintiff accesses numerous websites at a time to compare merchandise, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20.     During the month of January 2020, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers and to educate herself as to the merchandise, sales, discounts, and promotions being offered, with the intent of making a purchase through the Website or at one of Defendant's stores.

21.     Plaintiff utilizes screen reader software that allows individuals who are visually disabled to communicate with websites.  However, the Website contains access barriers that prevent its free and full use by visually disabled individuals using keyboards and available screen reader software.  These barriers are pervasive and include, but are not limited to, the following:

        a. Mislabeled links;

        b. Mislabeled homepage button;

      c. Site function like menu drop-down options not labeled to integrate with the screen reader;

      d. Buttons not labeled; and

      e. Missing descriptions for image content.

22.     The Website also lacks prompting information and accommodations necessary to allow visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the Website.

23.     Plaintiff attempted to locate an "accessibility" notice, statement or policy on the Website that would direct her to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the Website. Although, the Website appeared to have an "accessibility" notice  displayed, that "accessibility" notice still could not be effectively accessed by, and continued to be a barrier to, visually disabled persons such as Plaintiff.  Plaintiff thus was unable to receive any menaignful assistance to enable her to fully navigate the Website.

24.     The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, as she is unable to participate in the same online computer shopping experience, with access to the merchandise, sales, discounts, and promotions as provided  at the Website and for use in the physical stores, as the non-visually disabled public.

25.     Plaintiff desires and intends, in the near future once the Website's access barriers as described herein are removed or remedied, to patronize Defendant's physical stores and to use the Website, but she is unable to fully do so as she is unable to effectively communicate with Defendant due to her severe visual disability and the Website's access barriers.  Thus, Plaintiff, as well as others who are blind or with visual disabilities, will suffer continuous and ongoing harm

from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's retail stores and the Website, and the fact that the Website clearly provides support and is connected to Defendant's retail stores for its operation and use, the Website is an intangible service, privilege and an advantage of Defendant's brick and mortar store that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges and advantages afforded to the non-disabled public both on-line and at its physical locations, which are places of public accommodations subject to the requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

33.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

34.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

35.     On information and belief, Defendant has not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

36.     On information and belief, the Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

37.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's merchandise offered on the Website online from their homes.

38.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the Website, in contravention of the ADA.

39.     Further, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

40.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the Website.

41.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within the Website which prevent individuals with disabilities who are visually disabled from the means to comprehend information presented therein.

42.     On information and belief, Defendant is aware of the need to provide full access to all visitors to the Website.

43.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with disabilities who are visually disabled, including Plaintiff.

44.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

45.     Notice to Defendant is not required because of Defendant's failure to cure the violations.

46.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## <u>COUNT I – VIOLATION OF THE ADA</u>

48.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

49.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the Website, as defined within §12181(7) (E) and is subject to the ADA.

50.     Pursuant to 42 U.S.C. §12181(7)(E), the Website is covered under the ADA because it provides the general public with the ability to locate Defendant's physical stores, purchase merchandise that is also available in the physical stores, and sign up for an electronic emailer to receive offers, benefits, exclusive invitations, and discounts for use at the physical stores.  The Website thus is an extension of, gateway to, and intangible service, privilege and advantage of Defendant's physical stores. Further, the Website also serves to augment Defendant's physical stores by providing the public information on the various physical locations of the stores and by educating the public as to Defendant's available merchandise sold through the Website and in its physical stores.

51.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53.    In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54.    Defendant's Website must comply with the ADA, but it is not, as specifically alleged hereinabove and below.

55.    Because of the inaccessibility of the Website, individuals with disabilities who are visually disabled are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its Website, and at its physical stores, in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

56.    The Website was subsequently visited by Plaintiff's expert in March 2020, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Despite Defendant being a defendant in a prior ADA accessibility lawsuit, which likely resulted in a confidential settlement that obligated Defendant to remediate the Website, Defendant has made no material changes or improvements to the Website to enable its full use, enjoyment and accessibility for visually disabled persons such as Plaintiff. Defendant also has not disclosed, to the public, any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals.   In addition, although Defendant had posted an "accessibility" statement on the Website, that statement was tested and found not to be fully accessible to blind and visually disabled pesons, nor did it provide

a viable alternative means of access to and navigation of the Website for such individuals. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of a viable and effective accessibility notice, policy or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contesnt of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

57.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

58.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

59.     There are readily available, well established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

60.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to the Website by individuals, such as Plaintiff, with visual disabilities who requires the

assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

61.      The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

62.      According to 28 C.F.R. §36.303(b) (1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63.      According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c) (1) (ii).

64.      Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.      As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

66.      As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to its brick and mortar physical stores locations, Plaintiff has

suffered an injury in fact by being denied full access to and enjoyment of Defendant's Website and physical stores.

67.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through the Website.

b)  Require Defendant to take the necessary steps to make the Website readily accessible to and usable by visually disabled users, and during that time period prior to the Website's being readily accessible, to provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c)  Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and locations, and becoming informed of and purchasing Defendant's merchandise online, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website.

14

69.    Plaintiff is entitled to recover her reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.  A declaration that Defendant's Website is in violation of the ADA;

B.  An Order requiring Defendant, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

---

[1]  or similar.

E.  An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Website to be fully accessible to the visually disabled;

H.  An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and

shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.  An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

L.  Such other and further relief as the Court deems just and equitable.

DATED:  April 29th, 2020.


**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com


**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com


By___*s/ Roderick V. Hannah*_____
        RODERICK V. HANNAH
        Fla. Bar No. 435384

By ___*s/ Pelayo M. Duran*_____
        PELAYO M. DURAN
        Fla. Bar No. 0146595